Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Nikoll Nikci, Esq.
Nevada Bar No. 10699
The Schwartz Law Firm, Inc.
626 South Third Street
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for the Debtors
And Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Jointly Administered Under |
| | ) | CASE NO.: 09-17008-MKN |
| | ) | |
| Jesus Martinez, | ) | CASE NO.: 09-17008-MKN |
| and Marco Flores | ) | CASE NO.: 09-17010-BAM |
| | ) | |
| Debtors. | ) | Hearing Date: |
| | ) | Hearing Time: |

## DISCLOSURE STATEMENT

*Table of Contents*

I.      Introduction..................................................................................................1
II.     Background ..................................................................................................3
III.    Summary of the Plan of Reorganization.....................................................5
IV.     Means of Implementing the Plan .................................................................8
V.      Confirmation Requirements and Procedures .............................................11
VI.     Effect of Confirmation of the Plan.............................................................14
VII.    Other Plan Provisions ................................................................................15

### I.    INTRODUCTION

This is the disclosure statement (the "**Disclosure Statement**") in the individual chapter 11 cases of Jesus Martinez and Marco Flores (the "**Debtors**"). This Disclosure Statement contains information about the Debtors and describes their Plan of Reorganization (the "**Plan**") filed by them on June 2, 2009, in accordance with the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"). A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

The proposed distributions under the Plan are discussed at pages 5-8 of this Disclosure Statement. General unsecured creditors are classified in Classes 2 and 3, and will receive a distribution of _____ (%) of their allowed claims (the "**Unsecured Creditors' Distribution**"), to be distributed in 60 equal monthly payments by Cynthia Bitaut of Langlands and Grossa, LLP (the "**Distribution Agent**").

## PURPOSE OF THIS DOCUMENT

This Disclosure Statement describes:

- The Debtors and the significant events during the bankruptcy case;
- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive for your claim if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan;
- Why the Debtors believe the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the confirmed Plan itself that will establish and control your rights.

### Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed. In addition, included with this Disclosure Statement is the Notice of Confirmation, which described the objection deadlines and important Court dates relevant here.

### Time and Place of the Hearing to Confirm the Plan.

The Court will hold a hearing on _____, 2009 at _____ _.m. to determine whether to confirm the Plan, in Courtroom 2, at the United States Bankruptcy Court for the District of Nevada, 300 South Las Vegas Boulevard, Las Vegas, Nevada, 89101.

### Deadline for Voting to Accept or Reject the Plan.

If you are entitled to vote to accept or reject the Plan, enclosed is a ballot describing your claim. Please complete the ballot, as indicated, and return the ballot in the enclosed envelope to the Debtors' counsel, The Schwartz Law Firm, Inc., 626 South Third Street, Las Vegas, Nevada,

89101, Attn: Samuel A. Schwartz, Esq.  See section IV.A. below for a discussion of the voting eligibility requirements.

Your ballot must be received by _____ __, 2009 or it will **NOT** be counted.

**Deadline for Objecting to Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon (a) the Debtors' counsel, The Schwartz Law Firm, Inc., 626 South Third Street, Las Vegas, Nevada, 89101, Attn: Samuel A. Schwartz, Esq. and (b) The Office of the United States Trustee by **[insert date]**.

**Identity of Person to contact for more information.**

If you want additional information about the Plan, you should contact the Debtors' counsel, The Schwartz Law Firm, Inc., 626 South Third Street, Las Vegas, Nevada, 89101, at 702.385.5544, Attn: Samuel A. Schwartz.

## DISCLAIMER

**THE COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED DECISION ABOUT ITS TERMS.  THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED.**

## II.    BACKGROUND

**Description and history of the Debtors' Business**

The Debtors are individuals who began acquiring homes in Las Vegas, Nevada in 2002. During that time, the Debtors accumulated 6 residential properties in Nevada and 2 in California. The Debtors' case is not complex, insomuch as their assets are comprised of their residential properties and their vocations as a supermarket manager and salesperson in Las Vegas. The Debtors operate their business as sole proprietors, so complex ownership or corporate issues do not need to be addressed in their Plan.  Simply put, the Debtors' case is a direct result of the precipitous fall of the real estate market in the United States generally and the Las Vegas, Nevada market specifically.

**Insiders of the Debtors**

The Debtors are individuals with little or no payments to insiders.  The majority of their excess income and all of their rental income was used to pay for and carry the mortgage payments related to their residential property.

### Management of the Debtors before and During the Bankruptcy

During the time period prior to the date on which the Debtors filed their bankruptcy petition, the Debtors operated as sole proprietors. Therefore, they do not have any officers, directors or managers. The Debtors do intend, however, in accordance with Section 5.03 of the Plan, to manage their properties in a Nevada limited liability company named Lulu 96, Inc. (the "**Holding Company**"), for personal injury and property damage. Nothing in the plan should be construed to limit the Debtors' personal liability under the secured lender's first liens.

After the effective date of the order confirming the Plan, the Debtors will manage their own properties, through the Holding Company.

### Events Leading to Chapter 11 Filing

The events leading to this Chapter 11 case are the downturn in the economy generally and the Las Vegas real estate market specifically. Property values have fallen so significantly that the Debtors can no longer sell or refinance their properties without the approval of their secured creditors. As a result, rather than walk away from their properties, they elected to file this case to reorganize their debt and return their homes to profitability.

### Significant Events During the Bankruptcy Case

The following is a list of the significant events which occurred during the Debtors' Chapter 11 case. Because the Debtors are individuals, operating as a sole proprietors, their case is not complex. Accordingly, the only material event in this case centers around the Debtors' efforts to reorganize their secured debt so that they can turn their properties profitable, which in turn will provide the cash flow necessary to fund the Plan. Accordingly, a list of the significant events in the case follows.

The single most significant occurrence of the Debtors' case is the approval of their Motion To Value Collateral, "Strip Off" And Modify Rights Of Creditors Pursuant To 11 U.S.C. § 506(a) and § 1123 (the "**Motion to Value**"). Through the Motion to Value, the Debtors will be able to right-size the mortgages related to their residential property and turn the assets profitable.

The Debtors have not filed any adversary proceedings at this time, however, if the Court does not confirm the Plan, the Debtors may be forced to pursue any claims they hold against their mortgage lenders under The Truth In Lending Act, 15 U.S.C. §§ 1601, *et seq.*, The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, as well as certain Nevada state law claims.

To date, the Debtors only petitioned the Court to retain one professional in the case, which is The Schwartz Law Firm, Inc., as Debtors' counsel.

### Projected Recovery of Avoidable Transfers

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions at this time. The Debtors do not believe any significant transfers occurred

during the 2 year period leading up to the filing of this case. Importantly, the majority of the Debtors' significant transfers were the payment of their mortgages.

The Debtors do reserve their right, however, to perform and complete an investigation with regard to prepetition transactions. Although they does not believe significant transfers occurred, creditors should be aware that if you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Bankruptcy Code, the Debtors may seek to avoid such transfer.

### Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to creditors' claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

Separately, the Debtors filed their motion to set a bar date for proofs of claim in the case of August 15, 2009 (the "**Bar Date**"). The Bar Date is the date after which creditors cannot file a proof of claim in this case. Importantly, if your claim is listed in the Debtors' Schedules of Liabilities, and you agree with the claim amount listed there, you do not need to file a proof of claim in the case. If the Debtors amend their Schedules of Liabilities and your claim is affected, you will have an opportunity to file an objection to any such change.

### Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in **Exhibit B**. The value of the assets is based on the appraisals performed for each property and updated in connection with the approval of the Plan. Copies of the appraisals are available upon request, however, appraisals were forwarded to each secured lender in this case with respect to the related collateral. In addition, the Debtors reserve the right to re-appraise the properties prior to final confirmation of the plan to reflect the value of the home at that time. Therefore, if you are a secured lender, your secured claim may change in connection with confirmation of the Plan if the value of your collateral has fallen after the hearing on the Motion to Value. **If you are a secured creditor and intend to object to any revised valuation of your collateral based on a re-appraisal, you must file an objection to the Plan. If you are a secured lender subject to a revised appraisal, a copy of the related appraisal will be delivered to you upon filing with the Court. All other parties may receive copies of the Debtors' property appraisals upon request of Debtors' counsel.**

5

## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### What is the purpose of the plan of Reorganization?

As required by the Bankruptcy Code, the Plan places claims in separate classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtors did *not* place the following claims in any class:

### Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods or services sold to the Debtors in the ordinary course of business. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors' estimated administrative expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED    AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Expenses    Arising    in    the Ordinary Course of Business After the Petition Date | Current as of the date of filing of the Disclosure Statement. | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the court | Uknown | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement. |
| Office of the U.S. Trustee | $0.00 | Paid in full on the effective |

| Fees | | date of the Plan. |
|------|--|-------------------|
| **TOTAL** | | |

### Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Unless the holder of such a Section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The Debtors' are current with their taxes and do not estimate any Section 507(a)(8) priority tax claims are due at this time or for the tax year 2008.

### Classes of Claims

The Following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan.

### Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under Section 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general, unsecured claim in Class 2.

The following chart lists all classes containing Debtors' secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Secured claims of the Debtors' Residential Property First Lien Holders<br><br>Aggregate Allowed Secured Amount = $669,000.00<br>Pre-pet. Arrearage and Cure Payment = $17,999.62 | Unimpaired | Paid in accordance with the terms of the underlying notes and mortgages, and based on the principal value determined at the time of confirmation of the Plan. |
| 2 | Unsecured claims of the Debtors' First Lien Holders, which claims may increase in connection with the confirmation of the Plan. | Impaired | Monthly Payment = 0% of Allowed Claim, paid over 60 months<br>Payments Begin = Upon Confirmation<br>Payments End = After 60 payments<br>Treatment of Lien = Bifurcated and Stripped of its Secured Status |
| 3 | Unsecured Claims of the Debtors' Wholly Unsecured Second Lenders | Impaired | Monthly Payment = 0% of Allowed Claim, paid over 60 months<br>Payments Begin = Upon Confirmation<br>Payments End = After 60 payments |

| | | | Treatment of Lien = Stripped of its Secured Status |
| --- | --- | --- | --- |

**The Debtors' Plan shall, pursuant to Section 1123(b) of the Bankruptcy Code, provide for the revaluation of the Debtors' residential property listed on Exhibit B, in accordance with each property's current market value immediately prior to final confirmation of the plan. If you are a secured creditor, your secured claim may be reduced in accordance with Section 506(a) of the Bankruptcy Code, as of the effective date of the Plan. If you disagree with the revaluation or the appraised amounts, you should object to the Plan.**

### Priority Unsecured Claims – Class 4

Class 4 shall include certain priority claims that are referred to in Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code. The Bankruptcy Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. A class of holders of such claims, however, may vote to accept different treatment. As of the date of this Disclosure Statement, the Debtors do not have any priority unsecured claims.

### Classes of General unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code.

The following chart identifies the Plan's proposed treatment of Class Numbers 5 and 6, which contains the general unsecured claims against the Debtors:

| Class # | Description | Impairment | Treatment |
| --- | --- | --- | --- |
| 5 | 1122(b) Convenience Class | Unimpaired | Paid in full in cash on the effective date of the Plan or when due under contract or applicable non-bankruptcy law. |
| 6 | General Unsecured Class | Impaired | Monthly Payment = 0% of Allowed Claim, paid over 60 months<br>Payments Begin = Upon Confirmation<br>Payments End = After 60 payments |

### Equity Interest of the Debtors

Equity interest holders are parties who hold an ownership interest (i.e., equity interest). In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company, the equity interest holders are the members. Finally with respect to an individual who is a debtor, the Debtors are the equity interest holders.

In this case, because the Debtors are individuals, their equity interests will be unimpaired by the Plan.

## IV.   Means of Implementing the Plan

### Source of Payments

Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income. The Debtors' Cash Flow Analysis is attached hereto as **Exhibit D** and outlines the Debtors' sources and uses of income. Indeed, the math is not complex, insomuch as the Plan payments described in this Disclosure Statement are based on the sum of their rental and personal income, minus their monthly mortgage payments and personal expenses. The difference between the two amounts is the Debtors' proposed monthly Plan payment of two thousand five hundred dollars ($2,500.00).

### Method of Plan Payments

On or about the effective date of the Plan, the Debtors shall retain Cynthia Bitaut of Langlands and Grossa, LLP, 2655 Box Canyon Drive #190, Las Vegas, Nevada 89128 as their disbursement agent (the "**Disbursement Agent**"). Except as otherwise provided in the Plan, upon confirmation, the Debtors shall begin making monthly distributions to the Disbursement Agent under the Plan. The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtors' unsecured creditors holding allowed claims, until such claims are paid as set forth in the Plan.

### Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular monthly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims pursuant to Article VII.B.2 of the Plan.

In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtors to make any of their payments required under the Plan.

### Post-confirmation Management

The Debtors will manage their properties post-petition in the ordinary course. They will be authorized to enter into, terminate and renew lease agreements as they see fit. Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000.00, whichever is greater. In addition, the Debtors will be authorized to transfer the properties to the Holding Company to limit their liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

### Risk Factors

The significant risk related to the Debtors' Plan is the continued deterioration of both the housing and rental markets. Should the rental market deteriorate in a manner which causes the Debtors' homes to become unaffordable, and the related mortgages could not be modified or refinanced to reflect the changed circumstances, the Debtors may become unable to make their Plan payments.

In addition, should the Debtors become unemployed during the course of their Plan, they could also become unable to make their Plan payments. One of the Debtors is a supermarket manager and the other is a salesman; their income is stable, however, should their employment status change or their hours reduced, making their Plan payments could become impossible.

### Executory Contracts and Unexpired Leases

The Plan, in **Exhibit E**, lists all executed contracts and unexpired leases the Debtors will assume under the Plan. Assumption means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. **Exhibit E** also lists how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.

**If you object to the assumption of your unexpired lease or executive contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court sets an earlier time.**

All executory contracts and unexpired leases that are not listed in **Exhibit E** will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is August 15, 2009.** Any claim based on the rejection of a

contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### Tax Consequences of Plan

**Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with their own Accountants, Attorneys, and/or Advisors.**

The Debtors do not anticipate any adverse tax consequences to their estate from the Plan. To the extent the Debtors receive any debt forgiveness income related to this Chapter 11 case, such income would not be taxable under Section 108(a)(1) of the Internal Revenue Code, 26 U.S.C. §§ 1, *et seq.*

## V.   CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible. These requirements are not the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

### Who May Vote or Object

Any party-in-interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties-in-interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed(or allowed for voting purposes) and (2) impaired.

In this case, the Debtors believe that classes 2, 3 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Debtors believe that classes 1 and 4 are unimpaired and that holders of claims in each of these classes, therefore, are assumed to accept the Plan.

### What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (A) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or un-liquidated, or (B) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim by the Debtors, in which case, such creditor cannot vote unless the Court, after notice and hearing,

either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case is August 15, 2009.

The deadline for filing objections to claims is_____.

### What Is an Impaired Claim?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in Section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### Who is NOT Entitled to Vote?

The holders of the following six types of claims are *not* entitled to vote:

- **Holders of claims that have been disallowed by an order of the Court;**
- **Holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;**
- **Holders of claims in unimpaired classes;**
- **Holders of claims entitled to priority pursuant to Sections 507(a)(2), or (a)(8) of the Bankruptcy Code;**
- **Holders of claims in classes that do not receive or retain any value under the plan; and**
- **Administrative expenses.**

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.

### Who Can Vote In More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### Votes Necessary to Confirm the Plan

If impaired classes exists, the Court cannot confirm the Plan unless (A) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (B) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

### Votes necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (A) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the

Plan, and (B) the holders of at least two thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### Treatment of Non-Accepting Classes

Even if one or more of the impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by Section 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney regarding whether a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.**

### Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit C**.

### Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

### Ability to Initially Fund the Plan

The Debtors believe that they will have either (A) enough cash on hand or (B) sufficient cash flow on the effective date of the Plan to pay all claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as **Exhibit C**.

### Ability to Make Future Plan Payments And Operate Without Further Reorganization

The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan Payments.

The Debtors financial projections show that the Debtors will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, as set forth on **Exhibit D** of the Plan. The final Plan payment is expected to be paid on_____.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## VI.    EFFECT OF CONFIRMATION PLAN

### Discharge of the Debtors

Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtors will not be discharged from any debt excepted from discharge under Section 523 of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Modification of Plan

The Debtors may modify the Plan at any time before confirmation of the Plan. The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.

The Debtors may also seek to modify the Plan at any time after confirmation only if (A) the Plan has not been substantially consummated and (B) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors or the reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of General Unsecured Claims.

### Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VII.    OTHER PLAN PROVISIONS

### Vesting of Assets in the Reorganized Debtors and the Holding Company

After confirmation of the Plan, all property of the Debtors shall vest in the reorganized Debtors and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in the order approving the Motion to Value and the confirmation order. The reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtors shall pay the charges that they incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

### Release of Liens, Claims and Equity Interests

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtors' estate shall be fully released and discharged. The security interests of the Debtors' first lien holders however, shall be unimpaired under the Plan with respect to both the Debtors and their property.

### Certificate of Incorporation and Bylaws

The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtors. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtors shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

### Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

### Successors and Assigns

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

### Further Assurances

The Debtors or the reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

### Severability

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

**Return of Security Deposits**

Unless the Debtors agree otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

**Filing of Additional Documents**

On or before the Effective Date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.


_____          _____

Jesus Martinez                                      Marco Flores


_____

Samuel A. Schwartz, Esq.
Proposed Attorneys for the Debtors
And Debtors-in-Possession

## EXHIBITS

**Exhibit A -** Copy of Proposed Plan of Reorganization

**Exhibit B -** List of Properties

**Exhibit C –** Liquidation Analysis

**Exhibit D –** Cash Flow Analysis

**Exhibit E –** List of Executory Contracts

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Disclosure Statement

was sent on this 3rd day of June, 2009, via REGULAR MAIL, to the following:

US Trustee
Attention: Michal J. Bloom, Esq.
300 Las Vegas Blvd South
Suite 4300
Las Vegas, Nevada 89101

America's Servicing Co
Attention: Officer or Director
1 Home Campus
Des Moines, IA 50328-0000

Aurora Loan Services
Attention: Officer or Director
PO Box 1706
Scottsbluff, NE 69363-0000

Bank United Fsb
Attention: Officer or Director
4350 Sheridan Street
Hollywood FL 33021-0000

Central Mortgage Company
Attention: Officer or Director
801 John Barrow, Suite 1
Little Rock AR 72205-0000

Countrywide Home Lending
Attention: Officer or Director
Po Box 5170
Simi Valley CA 93062-0000

Emc Mortgage
Attention: Officer or Director
Po Box 293150
Lewisville TX 75029-0000

Indymac Bank
Attention: Officer or Director
7700 W Parmer Ln
Bldg D 2nd Floor
Austin TX 78729-0000

UBS AG New York Branch
Attention: Officer or Director
P.O. Box 52708
Irvine, CA 92619-0000

Washington Mutual Home Mortgage
Attention: Officer or Director
1301 Second Avenue
Seattle, WA 98101

HSBC Bank USA N.A.
P.O. Box 5213
Carol Stream, IL 60197

/s/
Bianca Maria Pellegrino